**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danielle Renae Lallier, | No. CV-19-08085-PCT-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Danielle Renae Lallier seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.      Background.**

On November 21, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning June 9, 2014. On July 18, 2017, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On January 2, 2018, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether

the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, and determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and that she has not engaged in substantial gainful activity since June 9, 2014. At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; persistent depressive disorder; generalized anxiety disorder; unspecified anxiety disorder; conversion disorder with mixed symptoms; major depressive disorder; panic disorder without agoraphobia; lumbar and cervical degenerative disc disease, status post L5-S1 fusion; idiopathic progressive neuropathy; and essential tremor. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 CFR 404.1567(b). The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She is able to occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel with her left upper extremity. The claimant must avoid hazards, including moving machinery and unprotected heights. She is capable of performing simple, routine tasks in an environment with few changes and free from fast-paced production requirements, like those found in assembly line work. She can have occasional and superficial interaction with coworkers and the public, such that the interaction is incidental to the task performed.

(AR 22).

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. The ALJ ultimately concluded that Plaintiff is not disabled within the meaning of the Social Security Act.

**IV.    Analysis.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Dr. Rosebrock, Dr. Frankel, and Dr. Mayer. The Court will address the ALJ's treatment of the medical opinions below.

**A.    Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

Cir. 2017) (quotations omitted). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### B. Record Evidence of Supporting Physicians.

Dr. Benjamin Rosebrock first treated Plaintiff by conducting an orthopedic consultative examination on March 6, 2015. (AR 346). Dr. Rosebrock stated that Plaintiff can complete self-care activities including meals, hygiene, and light housework, but observes some instability in her gait related to numbness in her feet. (AR 347). Dr. Rosebrock observed no acute distress and found during his examination that Plaintiff had a normal gait, was able to stoop without difficulty, and was able to demonstrate appropriate balance. (AR 348). When conducting an examination of Plaintiff's upper extremities, Dr. Rosebrock opined that Plaintiff demonstrated reduced grip strength in the left upper extremity, had difficulty picking up coins, but was able to screw a nut and bolt together without much difficulty. (AR 349). Plaintiff indicated no decreased sensation in her ulnar, median, and radial nerves. (AR 349).

In Plaintiff's local extremities, Dr. Rosebrock observed "no gross deformity noted in the bilateral lower extremity." (AR 350). Dr. Rosebrock noted Plaintiff had a full range of motion but Plaintiff reported decreased sensation to light touch, vibration, and pain over the plantar surface of bilateral lower extremities. (AR 350).

In Dr. Rosebrock's medical source statement, Plaintiff was diagnosed with left upper extremity weakness secondary to subjective findings, neuropathy of bilateral feet secondary to subjective findings, and chronic back pain secondary to previous lumbar function. (AR 352). Dr. Rosebrock concluded that Plaintiff's condition would impose limitations on her ability to perform work-related activities for 12 continuous months. (AR 352). Dr. Rosebrock opined that Plaintiff could carry a maximum of 20 pounds

occasionally, and 10 pounds frequently. (AR 352). He also concluded Plaintiff had the ability to stand or walk six-to-eight hours in an eight-hour day, had no limitations in sitting, seeing, hearing, or speaking. (AR 353). Dr. Rosebrock stated that Plaintiff could only occasionally climb, balance, handle, finger, or feel objects, but she had no limitations stooping, kneeling, crouching, crawling, or reaching. (AR 353). Finally, Dr. Rosebrock concluded that Plaintiff should not work around heights, moving machinery, or extremes in temperature. (AR 354).

Non-examining State agency physician Ernest Griffith, M.D. reviewed Plaintiff's file and concurred with Dr. Rosebrock's findings as to her ability to lift weight and perform certain tasks. (AR 80-82). Non-examining State agency physician Mikhail Baragan, M.D. agreed with Dr. Rosebrock's and Dr. Griffith's assessments of Plaintiff's residual functional capacity. (AR 96-99).

### C. Record Evidence of Non-Supporting Physicians.

Dr. Rosebrock's medical opinion was contradicted by the opinion of Dr. Justin Garrison, D.O., who conducted an orthopedic consultative examination of Plaintiff on March 6, 2015. (AR 368). Dr. Garrison opined Plaintiff had greater abilities than those identified in Dr. Rosebrock's opinion and concluded that Plaintiff did not have any limitations on her ability to perform work-related tasks for 12 continuous months. (AR 373). The ALJ could therefore discount Dr. Rosebrock's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. However, the ALJ decided to afford little weight to Dr. Garrison's opinion instead, as it "contrasts sharply with other evidence of record." (AR 25). Neither Plaintiff nor Defendant argues the ALJ was incorrect to do so.

Separately, Dr. Harris Frankel, M.D. recorded normal EMG findings when he examined Plaintiff in March 2014.[1] (AR 331) Dr. Muhammad A. Nayer, M.D. performed an EMG on February 16. 2016 that "showed no evidence of electrical instability." (AR

---

[1] Records indicate Plaintiff's time at Nebraska Methodist Hospital where Dr. Frankel conducted the EMG spanned March 10-13, 2014. (AR 299). The specific date of the EMG is not listed.

897). From these reports, the ALJ concluded that the medical evidence offset the credibility of Dr. Rosebrock's opinion, and after consideration of the record as a whole, Plaintiff was not disabled within the meaning of the Social Security Act.

**D.       The ALJ's Decision is Supported by Substantial Evidence.**

The ALJ's decision is supported by substantial evidence in the record. The ALJ determined that Dr. Rosebrock's opinion as an examining physician, and Drs. Griffith and Baragan's opinions as non-examining State agency physicians should be afforded weight, but only "partial weight" as "their opinions regarding the claimant's manipulative limitations appear to be excessively restrictive and inconsistent with the normal electromyography (EMG) of her left upper extremity, as well as the EMG of the lower extremities that revealed only mild impairments." (AR 25). The record includes normal EMG findings from examining physician Dr. Frankel (AR 301) and an EMG performed by Dr. Nayer that "showed no evidence of electrical instability. (AR 897). The ALJ articulated that those studies were the basis for discounting the testimony of examining physician Dr. Rosebrock and non-examining physicians Dr. Griffith and Dr. Baragan. As the Commissioner argues, the EMG studies were performed both before and after Dr. Rosebrock's examination, which could increase the studies' persuasive value. (Doc. 17 at 7.) The ALJ's opinion is therefore supported by substantial evidence, even if rational individuals might disagree on the correct outcome. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted). *See also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence.")

Plaintiff's arguments that the ALJ's determination lacked substantial evidence to support it are unavailing. First, Plaintiff states that the ALJ's general statement that Dr. Rosebrock's, Dr. Griffith's, and Dr. Baragan's opinions were "overly restrictive" is not a valid reason to deny disability benefits to Plaintiff, as it fails to offer a substantive basis for

her conclusion. (Doc. 15 at 9, citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).) However, the ALJ's rationale for rejecting Dr. Rosebrock's conclusions was not merely a "boilerplate" statement regarding his credibility; the ALJ first considered Dr. Rosebrock's conclusion, that "the claimant is limited to performing work at a light exertional level with additional manipulative, postural, and environmental limitations," before concluding that this diagnosis was not consistent with the "normal" readings of the earlier and later EMG studies. That is a specific assessment of why the ALJ chose to afford only partial weight to Dr. Rosebrock's analysis. In *Nguyen*, the ALJ did not expressly reject the opinion of an examining doctor, and the conclusions the ALJ did draw contradicted the rest of the medical record. *Id*. at 1464. The ALJ's decision in this case is more specific, directly addresses Dr. Rosebrock's conclusions, and refers to other record evidence in support of the ultimate conclusion. *Nguyen* is distinguishable from this case.

Second, Plaintiff states that the medical analysis impermissibly substitutes the medical professionals' opinions in favor of the ALJ's, citing to the Ninth Circuit's decision in *Tackett*. (Doc. 15 at 9.) *Tackett* is readily distinguishable; there, the Ninth Circuit rejected the ALJ's determination because the ALJ disregarded medical evidence based solely on the claimant's testimony during the administrative hearing that he once took a road trip to California. *Tackett*, 180 F.3d at 1103. Here, the ALJ cited to the medical records and notations of physicians who conducted EMG studies on Plaintiff. With conflicting medical evidence from examining physicians, the ALJ here did not simply ignore medical evidence in favor of a personal opinion; the ALJ determined which of competing medical opinions was most persuasive, consistent with the ALJ's responsibility as stated in *Embrey*.

Third, the ALJ also did not "ignore material evidence" of abnormal functioning of the nerves. Plaintiff argues that the ALJ failed to consider the "positive findings" that Plaintiff developed mild bilateral carpal tunnel syndrome affecting sensory components. (Doc. 15 at 10.) The ALJ's decision characterized the EMG of the lower extremities as revealing "only mild impairments." (AR 25). Plaintiff argues that the ALJ's characterization of the EMG of the lower extremities as revealing "only mild impairment"

was error, as the "only EMG and NCV of Lallier's lower extremities […] revealed evidence of peripheral neuropathy in bilateral lower extremities. The diagnostic impression did not describe Lallier's bilateral lower extremity peripheral neuropathy as 'mild.'" (Doc. 15 at 10.) Plaintiff states that an ALJ "may not ignore material evidence contradicting its conclusion," which the ALJ in this case did by failing to take into account Plaintiff's bilateral lower extremity peripheral neuropathy. (Doc. 15 at 10, citing *Gallant v. Heckler*, 753 F.2d 1540, 1456 (9th Cir. 1984).)

The Commissioner counters that the ALJ's use of the term "mild" should be read in the context of whether it is "sufficiently severe to significantly affect a claimant's ability to perform work activity." (Doc. 17 at 9, citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).) The Court agrees; reading the term "mild" in the context of the *Hoopai* standard is entirely consistent with the ALJ's finding that Plaintiff, while not disabled within the meaning of the Social Security Act, was still nonetheless unable to perform certain work-related activities. (AR 26). It is Plaintiff's burden to prove disability, which means Plaintiff is responsible for demonstrating how the cited evidence contradicts the ALJ's conclusion, as opposed to merely asserting that it does. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). The Court will not set aside the ALJ's determination that the EMG of the lower extremities revealed "only mild impairments" that did not warrant a finding of disability.

Finally, Plaintiff's arguments against accepting the vocational expert's testimony regarding Plaintiff's residual functional capacity focus on the ALJ's decision to discount the opinions of Drs. Rosebrock, Griffith, and Baragan. (Doc. 15 at 11.) ("Remand is appropriate in this case because none of the hypothetical questions propounded at the hearing include the manipulative limitations assessed by Drs. Rosebrock, Griffith, and Baragan.") As it was not legal error for the ALJ to discount the medical opinions of Plaintiff's experts, it is not legal error for the ALJ to have considered hypothetical testimony from the vocational expert that did not account for the limitations elucidated by Plaintiff's medical experts. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Accordingly, the Court concludes that the ALJ's decision that Plaintiff is not disabled within the meaning of sections 216(i) and 223(d) of the Social Security Act is supported by substantial evidence.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 26th day of March, 2020.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge